IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| WIRECO WORLDGROUP, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 15-06103-CV-N-RK |
| | ) |
| LIBERTY MUTUAL FIRE INSURANCE | ) |
| COMPANY, THE FIRST LIBERTY | ) |
| INSURANCE CORPORATION, | ) |
| | ) |
| Defendants. | ) |

## ORDER

Now pending before the Court are Plaintiff's and Defendants' cross motions for summary judgment. (Docs. 68, 70.) On January 10, 2017, the Court held oral arguments on the motions. (Doc. 79.) The facts presented in the motions fall within the arena of workers' compensation insurance, which uses a complex formula to calculate an employer's annual premium. Specifically, the parties dispute whether one factor – the Schedule Rating Modification factor – was appropriately applied within the otherwise correct premium calculation. After careful review, the Court **DENIES** Plaintiff's Motion for Summary Judgment (doc. 68) and **GRANTS** Defendants' Motion for Summary Judgment (doc. 70).

**I.  Background**

Plaintiff WireCo WorldGroup, Inc. ("WireCo")'s action against Defendants Liberty Mutual Fire Insurance Company and The First Liberty Insurance Corporation (collectively, "Liberty") stems from the allegation that WireCo is entitled to a partial refund of insurance premiums that it paid Liberty for workers' compensation insurance.

WireCo is a large wire and cable manufacturing company that operates in many states, including Texas and Missouri. Beginning in 2009, WireCo purchased a series of workers' compensation insurance policies from Liberty. The first policy's inception date was June 30, 2009, and expired on June 30, 2010 ("2009 Policy"). (Doc. 1-1.) For the next three years, Liberty issued a renewal policy to WireCo providing workers' compensation and employers' liability insurance coverage. The first renewal policy ("2010 Renewal") was in effect from June 30, 2010, to June 30, 2011. (Doc. 1-2.) The second renewal policy ("2011

Renewal") was in effect from June 30, 2011, to June 30, 2012. (Doc. 1-3.) The third renewal policy ("2012 Renewal") was in effect from June 30, 2012, to June 30, 2013. (Doc. 1-4.) The Court will refer to the 2010 Renewal, 2011 Renewal, and 2012 Renewal, collectively as the "Renewal Policies."

The Renewal Policies each consist of an Information Page, terms and conditions, as well as numerous endorsements. (Docs. 1-2, 1-3, 1-4.) They provide that the premium is to be calculated twice: first, before the policy goes into effect (the "estimated premium"); and second, after the policy expires (the "final premium"). (Doc. 1-2 at 96, Doc. 1-3 at 39, Doc. 1-4 at 30.) In addition, the Renewal Policies reflect that WireCo was to pay the estimated premium before the policy expired, and then once the policy expired and the final premium was calculated, WireCo was entitled a refund or required to pay an additional amount:

> The premium shown on the Information Page, schedules and endorsements is an estimate. The final premium will be determined after this policy ends by using the actual, not the estimated, premium basis and the proper classifications and ratings that lawfully apply to the business and work covered by this policy. If the final premium is more than the premium you paid us, you must pay us the balance. If it is less, we will refund the balance to you.

(*Id.*) Additionally, the Renewal Policies state:

> All premiums for this policy will be determined by our manuals of rules, rates, rating plans and classifications. We may change our manuals and apply the changes to this Policy if authorized by law or a governmental agency regulating this insurance.

(Doc. 1-2 at 95, Doc. 1-3 at 38, Doc. 1-4 at 29.) Finally, the Information Page of the Renewal Policies states:

> The premium for this policy will be determined by our Manuals of Rules, Classifications, Rates and Rating Plans. All information required below is subject to verification and change by audit.

(Docs. 1-2 at 2, Doc. 1-3 at 42, Doc. 1-4 at 33.)

The parties dispute whether the premiums for the Renewal Policies were properly determined in accordance with Liberty's rating plans – specifically, whether the premiums for the policies were properly determined in accordance with Liberty's Schedule Rating Plans. Additionally, the parties dispute whether Liberty's Schedule Rating Plans are incorporated into the Renewal Policies such that a breach of a term in the Schedule Rating Plans is a breach of the corresponding policy.

Schedule rating is a method of adjusting the premium applied to a workers' compensation risk in order to account for readily-identifiable factors having a bearing on the probability or severity of future losses and other risk factors not accounted for by other rating adjustments.  (Doc. 69 at 10; Doc. 74 at 6, 10.)  With respect to both Missouri and Texas, schedule rating debits and credits are discretionary, but if applied by an underwriter, then the debits and credits are applied at policy inception; stated another way, the debits and credits are applied to the estimated premium.  (*Id.*)  A schedule rating debit of 10% increases the premium by roughly 10%; conversely, a schedule rating credit of 10% lowers the premium by roughly 10%.  (*Id.*)

Here, Liberty filed Schedule Rating Plans with the directors of insurance for Missouri and Texas, and these plans were approved by each director for Liberty's use ("Missouri Schedule Rating Plan", "Texas Schedule Rating Plan", and collectively "Schedule Rating Plans").  (Docs. 1-7, 1-8.)  According to the Schedule Rating Plans, Liberty's underwriter may adjust the insurance premium based on a number of "Risk Characteristics" within specified ranges of adjustment.  (*Id.*)  The Risk Characteristics include items such as safety devices, employee training, drug testing, age of equipment, and medical facilities.  (Doc. 1-7 at 8, Doc. 1-8 at 6.)  By way of example, in accordance with the Missouri Schedule Rating Plan, Liberty could factor in a 5% debit or credit based on WireCo's employee training at WireCo's Missouri facilities; and in accordance with the Texas Schedule Rating Plan, Liberty could factor in a 20% debit or credit based on WireCo's employee training at WireCo's Texas facilities.  (*Id.*)  In addition, Liberty's Missouri Schedule Rating Plan states:

> No [s]chedule debit or credit can take effect until the evidence supporting the modification is in our files.
>
> \*\*\*
>
> The customer will be informed in writing within ninety (90) days of the policy inception or renewal date, of the basis for any schedule debit or credit applied.  If the policy is subject to any changes in its schedule debits or credits upon renewal, we will notify the customer.

(Doc. 1-7 at 9.)  The Texas Schedule Rating Plan states:

> At the time that the schedule rating factor is applied, the carrier must have documentation on file detailing the basis for the credit or debit.

(Doc. 1-8 at 6.)

3

The following chart reflects the schedule ratings for Missouri and Texas for the 2009 Policy, 2010 Renewal, 2011 Renewal, and 2012 Renewal:

|  | Missouri's Schedule Rating | Texas' Schedule Rating |
|---|---|---|
| 2009 Policy | 4.2% Credit | 4.2% Credit |
| 2010 Renewal | 1.3% Credit | No schedule rating applied |
| 2011 Renewal | 15% Debit | No schedule rating applied |
| 2012 Renewal | 25% Debit | 40% Debit |

(Doc. 71 at 7-9; Doc. 75 at 10, 14-15.)

In support of its motion for summary judgment, WireCo argues that (1) the Renewal Policies require Liberty to calculate the premiums according to the Schedule Rating Plans; (2) that Liberty did not comply with the Schedule Rating Plans' (a) notice requirement terms, (b) document requirement terms, and (c) "loss experience" exclusion terms; and (3) therefore, Liberty used an improper schedule rating factor to calculate WireCo's premium.  In opposition to WireCo's motion for summary judgment and in support of its own motion for summary judgment, Liberty argues that (1) the Renewal Policies did not incorporate the terms of the Schedule Rating Plans; (2) WireCo lacks standing to bring this action; and (3) WireCo cannot establish damages, which is an essential element of its breach of contract claims.

## II. Unpled Claims

As an initial matter, the Court must clarify precisely what claims are pending before the Court.  The Complaint (doc. 1) includes five counts, the fifth of which was previously dismissed (doc. 45).  The remaining Counts I-IV are all subject to the parties' cross motions for summary judgment and allege three theories for breach of contract based on the notice requirement terms within the Missouri Schedule Rating Plan and one theory for breach of contract based on the document requirement within the Texas Schedule Rating Plan.[1]  (Docs. 68, 70.)

---

[1] Count I alleges a breach of the 2010 Renewal based on the Missouri Schedule Rating Plan.  In relevant part, WireCo alleged:

> 56. The 2010 Renewal is a contract.
>
> 60. **In breach of the contract of insurance, Liberty [] reduced the schedule credit from 4.2% to 1.3%** when calculating the estimated premium for the 2010 Renewal **without giving WireCo the required notice** that the renewal premium would increase due to a modification in the schedule rating factor.

4

WireCo now seeks summary judgment on two additional theories for breach of contract: (1) that Liberty breached the document requirement terms of the Missouri Schedule Rating Plan; and (2) that Liberty breached the Renewal Policies because Liberty impermissibly considered WireCo's "loss experience" in calculating WireCo's schedule ratings.

With respect to the first additional theory, WireCo admits that it did not plead that basis for breach of contract but argues that it is excused from doing so based on the notice pleading standard set forth in Federal Rule of Civil Procedure 8. (Doc. 76 at 30.) In addition, WireCo submits that the parties' communications during discovery put Liberty on notice that WireCo contended that Liberty did not have necessary documentation on file with respect to the Missouri schedule ratings. (*Id.* at 30-31.)

Regarding the second additional theory, WireCo cites to the following parallel allegations in the Complaint – "As a direct result of not using the correct schedule rating credit of 4.2%, WireCo paid excess premiums and is entitled to refund in the amount of $33,359 plus pre-judgment interest" – contending that it broadly alleged an incorrect determination of the

---

> 62. **Having failed to give the required notice**, the correct schedule rating factor for the 2010 Renewal should have been a credit of 4.2%.
>
> 63. As a direct result of not using the correct schedule rating credit of 4.2%, WireCo paid excess premiums and is entitled to refund in the amount of $33,359 plus pre-judgment interest.

(Doc. 1 at 9 (emphasis added.)) Count II alleges a breach of the 2011 Renewal based on the Missouri Schedule Rating Plan, and Count III alleges a breach of the 2012 Renewal based on the Missouri Schedule Rating Plan; other than changing the year-specific data within these counts, the relevant language is identical to the language identified above for Count I. (Doc. 1 at 9, 10, 11.) Finally, Count IV alleges a breach of the 2012 Renewal based on the Texas Schedule Rating Plan. In relevant part, WireCo alleged:

> 83. The 2012 Renewal is a contract.
>
> 86. **In breach of the contract of insurance, Liberty[] applied a [s]chedule [r]ating debit of 40% effective June 30, 2012, but did not have in its file as of June 30, 2012[,] documentation sufficient to support a 40% debit and detailing the basis for a 40% debit.**
>
> 88. **Having failed to obtain the required documentation**, Liberty [] is precluded from applying any [s]chedule [r]ating factor for the Texas operations of the 2012 Renewal.
>
> 89. As a direct result of using the incorrect schedule rating debit of 40% for the Texas operations, WireCo paid excess premiums in the amount of $55,652.

(Doc. 1 at 12 (emphasis added.))

5

premium as the basis for each breach of contract claim. (Doc. 75 at 4 (citing Doc. 1 at ¶¶ 63, 71, 80, 89.))

The liberal pleading standard under Federal Rule of Civil Procedure 8(a) does not afford a plaintiff with an opportunity to raise new claims at the summary judgment stage. In fact,

> the liberal pleading standard[] under . . . Rule 8(a) [is] inapplicable after discovery has commenced. At the summary judgment stage, the proper procedure for [a] plaintiff[] to assert a new claim is to amend the complaint in accordance with Fed. R. Civ. P. 15(a). A plaintiff may not amend [its] complaint through argument in a brief opposing summary judgment.

*Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004); *see also N. States Power Co. v. Fed. Transit Admin.*, 358 F.3d 1050, 1057 (8th Cir. 2004).

Rather than broadly pleading breach of the Schedule Rating Plans, WireCo alleged breaches of specific terms within the Schedule Rating Plans. This is evident from the introduction of the Complaint which states "WireCo seeks to recover premium overpayments . . . The overpayments were due to [Liberty] improperly increasing premiums by changing the schedule rating factor without providing WireCo with notice as required by the contracts and by failing to obtain the required documentation." (Doc. 1 at 1-2.) Moving through the Complaint, WireCo directly ties the notice requirement to the Missouri schedule rating and the documentation requirement to the Texas schedule rating. (Doc. 1 at 6-13.) Despite WireCo's assertions to the contrary, WireCo did not allege that Liberty breached the document requirement terms of the Missouri Schedule Rating Plan; or (2) that Liberty breached the Renewal Policies because Liberty impermissibly considered WireCo's "loss experience" in calculating WireCo's schedule ratings.

Therefore, WireCo may not assert those claims for the first time on summary judgment. *See N. States Power Co.*, 358 F.3d at 1057 ("Thus, while we recognize that the pleading requirements under the Federal Rules are relatively permissive, they do not entitle parties to manufacture claims, which were not pled, late into the litigation for the purpose of avoiding summary judgment."); *Sun Media Sys. v. KDSM, LLC*, 564 F. Supp. 2d 946, 995-96 (S.D. Iowa 2008) (finding that an allegation raised for the first time in response to motion for summary judgment was untimely noting, "Plaintiff has never sought leave to amend the complaint to assert this as a basis for its [breach of contract] claim, and accordingly, the argument is untimely."); *J. Lloyd Int'l, Inc. v. Testor Corp.*, No. 08-CV-134-LRR, 2010 U.S. Dist. LEXIS 13414, at *17-18

(N.D. Iowa Feb. 17, 2010) ("After Defendant moved for summary judgment on the breach of contract claim alleged in the Complaint, it would be unfair to now allow Plaintiff to base that claim on entirely different facts and theories. . . . Accordingly, Plaintiff's breach of contract claim is confined to the allegation raised in the Complaint.").

For the reasons stated above, the Court determines that the claims for summary judgment are limited to (1) whether there was a breach of the 2010 Renewal, 2011 Renewal, and 2012 Renewal based on the notice requirement within the Missouri Schedule Rating Plan and (2) whether there was a breach of the 2012 Renewal based on the document requirement within the Texas Schedule Rating Plan.[2]

### III.     Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A party who moves for summary judgment bears the burden of showing that there is no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). An issue of fact is only genuine if it has a real basis in the record, and is material if it "might affect the outcome of the suit under the governing law." *Id.* at 248. When considering a motion for summary judgment, a court must scrutinize the evidence in the light most favorable to the nonmoving party, and the nonmoving party "must be given the benefit of all reasonable inferences." *Mirax Chem. Prods. Corp. v. First Interstate Commercial Corp.*, 950 F.2d 566, 569 (8th Cir. 1991) (citation omitted).

In resisting summary judgment, the nonmoving party may not rest on the allegations in its pleadings, but must, by affidavit and other evidence, set forth specific facts showing that a genuine issue of material fact exists. FED. R. CIV. P. 56(c); *see also Thomas v. Corwin,* 483 F.3d 516, 527 (8th Cir. 2007) ("mere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment"). In so doing, the nonmoving party "cannot create sham issues of fact in an effort to defeat summary judgment." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399, 402 (8th Cir. 1995) (citation omitted). "Rule 56(c) mandates the entry of summary judgment, after

---

[2] However, this does not foreclose the opportunity for WireCo to raise claims based on the alternate theories either in a new action or by seeking leave to amend its Complaint in this action; but at this juncture, the summary judgment stage, these claims have not been pled.

adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## IV. Discussion

To prevail on a motion for summary judgment on a breach of contract claim, WireCo must prove that there is no genuine dispute as to the material facts establishing: "(1) the existence and terms of a contract; (2) that plaintiff performed or tendered performance pursuant to the contract; (3) breach of the contract by the defendant; and (4) damages suffered by the plaintiff." *Restored Images Consulting, LLC v. Vinyl & Assocs.*, No. 4:14-CV-527-DGK, 2016 U.S. Dist. LEXIS 70828, at *19 (W.D. Mo. May 31, 2016) (citing *Keveney v. Mo. Military Acad.*, 304 S.W.3d 98, 104 (Mo. 2010).[3]

Here, the parties do not dispute the existence of a contract as they agree that the 2010 Renewal, 2011 Renewal, and 2012 Renewal were each a contract. However, they disagree as to whether the Renewal Policies incorporate separate documents - the Schedule Rating Plans. As mentioned above, WireCo contends that Liberty breached the notice requirement within the Missouri Schedule Rating Plan and the document requirement within the Texas Schedule Rating Plan. In opposition, Liberty moves for summary judgment on the basis that the Renewal Policies did not incorporate the terms of the Schedule Rating Plans which WireCo contends Liberty violated. Thus, Liberty argues that because the notice requirement and document requirement were not incorporated into the Renewal Policies, any alleged violation of said terms cannot be a breach of contract.

Contract interpretation is a question of law for the Court to decide. *Barkley, Inc. v. Gabriel Bros.*, 829 F.3d 1030, 1038 (8th Cir. 2016). In guiding that decision, it is well established that "[i]t is possible for a contract to incorporate the terms of a separate . . . document by reference." *Liberty Mut. Fire Ins. Co.*, 2009 U.S. Dist. LEXIS 47323, at *8; *see also State ex rel. Hewitt v. Kerr,* 461 S.W.3d 798, 810-11 (Mo. 2015). However, "intent to incorporate must be clear" and "such a document becomes a part of the agreement only if 'the contract makes

---

[3] The Court will apply Missouri law without further analysis as both parties have done so in their briefs and because the Court finds that it is appropriate pursuant to Missouri's choice-of-law rules. *See Liberty Mut. Fire Ins. Co. v. Centimark Corp.*, No. 4:08CV230-DJS, 2009 U.S. Dist. LEXIS 47323, at *6-7 (E.D. Mo. June 5, 2009) (detailing Missouri's choice-of-law analysis).

8

clear reference to the document and describes it in such terms that its identity may be ascertained beyond doubt.'" (*Liberty Mut. Fire Ins. Co.*, 2009 U.S. Dist. LEXIS 47323, at *8) (citations omitted).

WireCo argues that the Renewal Policies' language itself is abundantly clear that Liberty's "rating plans" are incorporated by reference into each policy. In support, WireCo cites to the following three phrases from the policies:

> All premiums for this policy will be determined by our manuals of rules, rates, rating plans and classifications. We may change our manuals and apply the changes to this Policy if authorized by law or a governmental agency regulating this insurance.

*\*\*\**

> The premium shown on the Information Page, schedules and endorsements is an estimate. The final premium will be determined after this policy ends by using the actual, not the estimated, premium basis and the proper classifications and ratings that lawfully apply to the business and work covered by this policy. If the final premium is more than the premium you paid us, you must pay us the balance. If it is less, we will refund the balance to you.

*\*\*\**

> The premium for this policy will be determined by our Manuals of Rules, Classifications, Rates and Rating Plans. All information required below is subject to verification and change by audit.

(Doc. 1-2 at 2, 95-96; Doc. 1-3 at 38-39, 42; Doc. 1-4 at 29-30, 33.)

Neither party cites to on-point case law construing the language now before the Court.[4] Upon its own review, the Court found only a small number of cases construing similar language. In *Am. Ins. Co. v. C.S. Mc Crossan, Inc.*, the Eighth Circuit construed a workers' compensation policy under which the plaintiff was seeking unpaid insurance premiums. 829 F.2d 702 (8th Cir. 1987). There, "deposit premiums were paid, but they were subject to adjustment up or down (within an agreed range) in the light of the loss experience of the insureds[.]" *Am. Ins. Co.*, 829 F.2d at 702. The Eighth Circuit noted that, while an endorsement within the workers' compensation policy made several references to a specific plan, the endorsement did not incorporate it. *Id.* at 703 ("The

---

[4] The Court determines that *W. Bend Mut. Ins. Co. v. Procaccio Painting & Drywall Co.*, 794 F.3d 666 (7th Cir. 2015), does not aid its incorporation analysis here because in that case the insurance company conceded that changes to the schedule rating were required to conform to the schedule rating plan.

9

Endorsement made several references to Plan D, but did not incorporate it."). Similarly, in *Am. Modern Home Ins. Co. v. Tranex Credit Corp.*, a district court found that although a workers' compensation policy "refers to the rules, rates and rating plans, it does not expressly incorporate them." IP97-1808-C-T/G, 2000 U.S. Dist. LEXIS 7749, at *23 (S.D. Ind. May 24, 2000).

In line with these cases and in accordance with Missouri law requiring clear intent to incorporate, the Court determines that the two passing references to "rating plans" and single reference to "proper . . . ratings" here, falls short of showing a clear intent to incorporate the terms of the Schedule Rating Plans. *See Dunn Indus. Grp., Inc. v. City of Sugar Creek*, 112 S.W.3d 421, 436 (Mo. 2003) (finding that mere reference of a document does not incorporate the terms of that document); *Sniezek v. Kan. City Chiefs Football Club*, 402 S.W.3d 580, 584 (Mo. App. 2013) (same).

Alternatively, WireCo argues that the notification terms were incorporated by statute or incorporated as a matter of fact because Liberty sent an internal "Communication Update" to Liberty's underwriters mandating compliance with the notification terms. These arguments also fail. First, there is no Missouri statute that is analogous to the notice requirement in the Missouri Schedule Rating Plan. Second, Liberty's internal "Communication Update" was not a part of the Renewal Policies, and therefore failure to comply with it, does not amount to a breach of contract with a third party who never received the letter, except in connection with legal discovery.

Consequently, because the notice requirement and the document requirement of the Schedule Rating Plans are not terms of the Renewal Policies, any failure to comply with those terms does not constitute a breach of contract.[5] Therefore, Liberty has met its burden to establish that it is entitled to summary judgment.

The Court's resolution of this issue makes it unnecessary to consider the parties' other arguments within their cross motions for summary judgment.

---

[5] Regardless of this holding, the Court's ruling should not be interpreted as indicating approval of non-compliance, if any, with the Scheduling Rating Plans, which are after all, formal documents filed and approved with the states of Missouri and Texas. The Court's ruling is simply that such a violation does not lead to a private right of action for breach of contract in this case.

10

## V. Conclusion

For the foregoing reasons, Plaintiff's Motion for Summary Judgment (doc. 68) is DENIED, and Defendants' Motion for Summary Judgment (doc. 70) is GRANTED.

**IT IS SO ORDERED.**

s/ Roseann A. Ketchmark  
ROSEANN A. KETCHMARK, JUDGE  
UNITED STATES DISTRICT COURT

DATED: January 30, 2017